IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CITY OF CONCORD, NORTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-CV-734 |
| | ) | |
| PENNY BONITA ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Penny Robinson was arrested by Concord Police Department officers on drug charges, and officers seized over $17,000 from her hotel room. While her motion to return the seized money was pending in the criminal case in the Superior Court of Cabarrus County, North Carolina, the Police Department asked the Federal Bureau of Investigation if it would like to adopt the forfeiture of the money pursuant to federal law authorizing forfeiture of drug proceeds. The FBI said it would, and the City of Concord sent the money to the FBI, all with Ms. Robinson's motion still pending and without notice to the Superior Court, the state prosecutor, or Ms. Robinson. Ms. Robinson thereafter received notice of the federal forfeiture yet failed to object; the money was thus administratively forfeited to the United States. Later, when Ms. Robinson pled guilty to state charges, she asked the Superior Court to return the money to her and did not mention the federal forfeiture. The prosecutor consented, and the Superior Court so ordered. After the City brought the federal forfeiture to its attention, the Superior Court refused to set aside its order directing the City to return the money to Ms. Robinson and ruled that the City had acted illegally.

The City seeks a declaratory judgment that it behaved lawfully when it turned the money over to the FBI pursuant to federal forfeiture law and that the Superior Court had no jurisdiction to issue rulings concerning this money once it was seized by the FBI.  In her counterclaim, Ms. Robinson asserts that the City acted unlawfully in turning over the money while her state court motion was pending; she asks this Court to issue a declaratory judgment to that effect and to order the money returned to her.  The City has filed a motion for summary judgment.  (Doc. 19.)

Ms. Robinson's failure to protect her rights in the federal administrative forfeiture proceeding and subsequent request to the state court for the return of the money certainly carries a whiff of forum shopping.  Because the City was likely to get 80 percent of the money back for its internal use if the federal forfeiture was successful and would get nothing if disposition of the money was left up to the Superior Court, and because the City did not appeal the Superior Court's decision, there is the same unpleasant whiff of forum shopping around the City's conduct.  Whether the City's conduct was illegal or resulted in an invalid federal forfeiture is, however, a different question, and one made more difficult to answer by the awkward procedural history of this case and related issues of state-federal comity.

The Court concludes that it has jurisdiction over this case to the extent this is a proceeding to enforce a forfeiture, but that it does not have jurisdiction to overrule the state court's decisions to the extent those decisions are based on state law.  The Court further concludes that the state court exercised only *in personam* jurisdiction and did not exercise *in rem* or *quasi in rem* jurisdiction over the money.  Finally, the Court concludes that once the federal forfeiture began, the federal courts had exclusive *in rem* jurisdiction over the seized money, and that thereafter the Superior Court could not order the City to return the seized money to Ms. Robinson based on violations of federal forfeiture law or on absence of federal jurisdiction.  The motion for summary judgment is granted in substantial part.

2

# I.    PROCEDURAL AND FACTUAL BACKGROUND

The facts are undisputed.  For ease of reference, a chronology of events in chart form is attached as an Appendix.

On February 12, 2010, defendant Penny Robinson consented to a search by law enforcement officers of a suite she occupied at the Embassy Suites Hotel in Concord, North Carolina.  (Doc. 22 at ¶¶ 5, 7-8.)  During the search, officers located and seized approximately 25 grams of marijuana, some digital scales, a magazine with a marijuana theme, a police scanner, a pocket television, two computers, a smoking pipe, a lock box, and $17,600 in currency.  (*Id.* at ¶ 10.)  Ms. Robinson was charged in state court with Possession With Intent to Sell or Deliver Marijuana and Possession of Drug Paraphernalia.  (Doc. 25-11 at 3, ¶ 4.)

On February 16, 2010, the Concord Police Department, through Officer Keith Childers, began discussing with the FBI whether it wanted to initiate federal forfeiture proceedings against the money seized from Ms. Robinson.  (Doc. 22-1 at 2-3.)  On February 23, 2010, Ms. Robinson filed a motion for the return of seized property.  (Doc. 25-4.)  In the motion, she asserted that she received the $17,600 as a result of the settlement of a civil claim for the wrongful death of her daughter, and that the money was not subject to forfeiture under state law.  (*Id.* at 3-4.)  In emails with the FBI, Officer Childers discussed Ms. Robinson's claim that the money came from a wrongful death settlement.  (Doc. 22-1 at 4.)  However, he did not mention the pending state court motion, and there is no evidence before the Court that he or anyone working for the City was personally aware of it until well after it was filed.  (*See* Doc. 22 at ¶ 19.)

Ms. Robinson was indicted on March 1, 2010.  (Doc. 25-2.)  On that same day, the FBI received the City's formal "Request for Adoption of State or Local Seizure" asking the FBI to adopt a forfeiture of the money seized from Ms. Robinson.  (Doc. 22-2 at 4.)  The FBI accepted the City's adoption request on March 4 (Doc. 25-5) and the City mailed a check to the U.S.

3

Marshals Service on or about March 9. (Doc. 22 at ¶ 25; Doc. 25-6.) Neither Officer Childers nor the FBI informed anyone connected with the state court case about the forfeiture. The exact dates the FBI received the check and cashed it are not in the record.

On March 11, 2010, the Superior Court of Cabarrus County held a hearing on Ms. Robinson's motion for the return of seized property, which it denied without prejudice. (Doc. 25-7.) Because no evidence was presented, the Court held that it was "not inclined at this time to grant the motion without a full hearing on the underlying issues." (*Id.* at 2.)

On April 15, 2010, the FBI sent notices of forfeiture and of her right to contest the forfeiture of the money to Ms. Robinson, both at her home address and in care of her attorney in the criminal case. (Doc. 6 at 5, ¶ 15; Doc. 9 at ¶ 15; Doc. 24 at ¶ 3.) Ms. Robinson and her attorney each received this notice, but Ms. Robinson did not make any claim for the money in the administrative forfeiture proceedings. (Doc. 6 at 6, ¶ 16; Doc. 9 at ¶ 16; Doc. 24 at ¶¶ 6-7.)

Ms. Robinson pled guilty to misdemeanor drug charges on March 2, 2011. (Doc. 25-9.) An Assistant District Attorney advised the Superior Court that she believed Ms. Robinson had lawfully obtained the contested money through a civil action for the wrongful death of her daughter. (*Id.* at 12.) Based on the opinion of the District Attorney's Office as well as documentation Ms. Robinson provided the Court regarding the wrongful death claim, the Superior Court ordered the money returned to Ms. Robinson. (Doc. 25-8; Doc. 25-9 at 19.) At no time was the City or the Concord Police Department a party to this proceeding. It appears that the City had not told the District Attorney about the forfeiture, nor had the District Attorney conferred with the City about the status of the money seized from Ms. Robinson. Neither Ms. Robinson nor her attorney[1] mentioned the federal forfeiture proceedings.

---

[1] At some point, Ms. Robinson changed attorneys, so the attorney representing her when she pled guilty (*see* Doc. 25-9 at 2) was not the same attorney who received notice of the federal forfeiture (Doc. 24-3 at 2).

On June 6, 2011, the City filed a motion seeking reconsideration of the Superior Court's order requiring the Police Department to return the money to Ms. Robinson. (Doc. 25-10.) On August 8, 2011, the Superior Court denied the motion after hearing from counsel, finding that the original seizure of the money was lawful, but that the City had acted improperly and unlawfully in "seeking a forfeiture of the funds by the Federal Bureau of Investigation and transferring the funds to the Federal Bureau of Investigation forfeiture program, without approval by the Court or District Attorney" while the defendant's motion for return of funds was pending. (Doc. 25-11 at 7.) It was undisputed that under the FBI's forfeiture adoption program, "the FBI retains 20% of the value of the seized property and the remaining 80% is returned to the Local or State Agency for use in future narcotics interdiction measures." (Doc. 25 at 2 n.2 (emphasis removed).) The Superior Court ordered the City to pay Ms. Robinson 80 percent of the money ($14,080) as soon as it received its local share of funds from the FBI Forfeiture Adoption Program, and to pay her the remaining 20 percent ($3,520) within 30 days of the original refund to her. (*Id.* at 8-9.) In addition, the Superior Court made numerous findings concerning the actions of the City and the validity of the federal forfeiture. There is nothing to indicate that the City appealed this Order.

In September 2011, the City of Concord filed a Complaint for Declaratory Relief and Judgment in this court. (Doc. 1.) The City asked the Court to enter a judgment declaring the respective rights, responsibilities, and liabilities of the parties to this action with respect to the subject $17,600. After the City filed an Amended Complaint (Doc. 6), Ms. Robinson filed an Answer and Counterclaim, asking for similar declaratory relief. (Doc. 9.)

After the City of Concord filed a Motion for Summary Judgment (Doc. 19), the Court raised *sua sponte* the questions of whether it has jurisdiction in this case and, if it does, whether it should exercise it. The parties were allowed to file supplemental briefs, (Doc. 33), and did so. (Docs. 34, 35.)

## II. OVERVIEW OF RELEVANT LEGAL PRINCIPLES

"Since the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events." *United States v. Ursery*, 518 U.S. 267, 274 (1996). These civil *in rem* proceedings are fundamentally different from forfeitures arising out of criminal convictions. *Id.* at 275.

In general, "[t]he subject matter jurisdiction for [federal civil] forfeiture is conferred by 28 U.S.C. § 1355(a); the authority to forfeit is provided by 21 U.S.C. § 881(a)(6); and the rules of procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983." *United States v. Wilson*, ___ F.3d ____, 2012 WL 5448202, at *5 (4th Cir. Nov. 8, 2012). Title 21 U.S.C. § 881 authorizes forfeiture of illicit-drug-related property to the United States, including "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6); *see also Wilson*, ___ F.3d at ____, 2012 WL 5448202, at *4. Section 881(d) incorporates the "provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws." *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993). Those customs laws are found at 19 U.S.C. §§ 1602-1618. *See United States v. Washington*, 69 F.3d 401, 403 (9th Cir. 1995). Section 881(b) also adopts certain procedural rules set forth in the Civil Asset Forfeiture Reform Act ("CAFRA") at 18 U.S.C. § 981(b).

The United States may seize drug proceeds without a warrant for the purpose of initiating forfeiture proceedings under several different circumstances, one of which is if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency." 18 U.S.C. § 981(b)(2)(C). This transfer from a state law enforcement agency to a federal agency is often called "adoption." *See United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325 (1926); *United States v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 902 F.2d 267, 269 n.1 (4th

Cir. 1990).  Once the federal forfeiture is complete, the local law enforcement agency typically

receives a significant portion of the money back for its own use; this process is commonly called

"equitable sharing."[2]  *See DeSantis v. State*, 866 A.2d 143, 145-46 (Md. 2005) (describing

equitable sharing programs generally); Holcomb, 39 J. Crim. Just. at 274-75 (describing reasons

why state and local agencies would elect to use equitable sharing).

      Once property is seized,[3] the federal forfeiture process is straightforward.  As allowed by

the customs laws, the United States may, without resort to judicial proceedings, issue a

---

[2] Equitable sharing has been criticized by commentators.  *See, e.g.*, Frans J. von Kaenel,
*Missouri Ups the Ante in the Drug Forfeiture "Race to the Res*," 72 Wash. U.L.Q. 1469, 1474
(1994) (the "success [of equitable sharing] creates tension between state and local law
enforcement agencies and the beneficiaries of state forfeiture provisions, who are bypassed when
federal authorities adopt state seizures"); Eric Moores, *Reforming the Civil Asset Forfeiture
Reform Act*, 51 Ariz. L. Rev. 777, 794 (2009) (equitable sharing "allows state and local police to
bypass their own laws" and "results in . . . less political accountability"); Karis Ann-Yu Chi,
*Follow the Money: Getting to the Root of the Problem with Civil Asset Forfeiture in California*,
90 Calif. L. Rev. 1635, 1635 (2002) ("Financial gain is the obvious motive for many crimes.
Ironically, this motive also explains the problematic behavior of law enforcement agencies
involved in civil asset forfeiture."); Michael J. Duffy, *A Drug War Funded with Drug Money:
The Federal Civil Forfeiture Statute and Federalism*, 34 Suffolk U. L. Rev. 511, 512 (2001)
(drug-related forfeiture laws and equitable sharing "provide an economic incentive for policing
agencies to seize and forfeit property" that "profoundly [affects] the enforcement agenda of
numerous policing agencies"); *but see generally* David T. Gibson, *Spreading the Wealth: Is
Asset Forfeiture the Key to Enticing Local Agencies to Enforce Federal Drug Laws?*, 39
Hastings Const. L.Q. 569 (2012) (arguing that federal asset forfeiture is one of the most effective
legal tools for inducing local and state governments to further federal drug policy goals and
reducing the budget demands of cash-strapped federal agencies responsible for drug
enforcement).  One quantitative study found that state and local law enforcement agencies use
federal equitable sharing to circumvent their own state forfeiture laws when state laws are more
burdensome or less financially rewarding to those agencies.  Jefferson E. Holcomb et al., *Civil
Asset Forfeiture, Equitable Sharing, and Policing for Profit in the United States*, 39 J. Crim.
Just. 273 (2011).

[3] While the cases are clear that federal jurisdiction cannot begin until the drug proceeds
come under the control of federal agents, they do not define the exact moment that federal
jurisdiction begins when the administrative forfeiture process is used.  *See United States v. One
1986 Chevrolet Van*, 927 F.2d 39, 44-45 (1st Cir. 1991) (holding that state court did not acquire
*in rem* jurisdiction when a criminal defendant filed a motion to return property in state court
"more than one month after [the defendant] was notified that [his seized] van had been referred
to the DEA for the institution of forfeiture proceedings"); *Green v. City of Montgomery*, 55 So.
3d 256, 263 (Ala. Civ. App. 2009) ("[F]ederal control . . . must have begun either at the time the

declaration of forfeiture for property up to a certain amount. *United States v. Minor*, 228 F.3d 352, 354 (4th Cir. 2000). This is typically called a "summary forfeiture" or an "administrative forfeiture." *See, e.g.*, *id.* at 354, 356. Both by statute and for due process reasons, the government must provide notice to interested parties. 19 U.S.C. § 1607(a); *Dusenbury v. United States*, 534 U.S. 161, 167 (2002); *Minor*, 228 F.3d at 354. If no person files a claim for the property within the prescribed time period, the government may declare the property forfeited. 19 U.S.C. § 1609; *Minor*, 228 F.3d at 354. The uncontested forfeiture has the "same force and effect" as a federal judicial forfeiture order and vests title to the property in the United States "free and clear of any liens or encumbrances . . . from the date of the act for which the forfeiture was incurred." 19 U.S.C. § 1609(b). If, however, a claim is filed, then "the government may seek forfeiture of the property only through judicial proceedings." *Minor*, 228 F.3d at 354 (citing 19 U.S.C. § 1608); *see also United States v. Martin*, 662 F.3d 301, 304 (4th Cir. 2011) (discussing the process CAFRA requires when a claimant challenges a civil administrative forfeiture).

 Forfeiture proceedings authorized by § 881 are *in rem* actions against the seized property. *E.g.*, *United States v. Chandler*, 36 F.3d 358, 362 (4th Cir. 1994) (explaining while discussing § 881 that "[b]ecause a forfeiture action is *in rem*, elements of a claim establishing forfeiture focus principally on the property's role in the offense and not on the owner's guilt"); *United States v. One 1987 Jeep Wrangler Auto.*, 972 F.2d 472, 476 (2d Cir. 1992) ("[T]he civil forfeiture action is brought directly against the property as defendant. . . . Thus, as the action is against the property and not the owner, the action is *in rem* in nature."). When the government brings a forfeiture action against property, the burden of proof is on the government to show by a

---

DEA accepted the adoptive-seizure request or at the time the United States Marshals took physical possession of the currency. . . . [W]e need not determine precisely which of the two dates would trigger federal control [under the facts of this case].").

preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1); *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002), *superseded by statute on other grounds as stated in United States v. $40,000 in U.S. Currency*, 2010 WL 2330353, at *3-4 (W.D.N.C. May 10, 2010).[4]

Title 28 U.S.C. §1355 provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." Pursuant to § 1355, federal courts routinely handle civil actions brought by the United States seeking forfeiture of drug proceeds. *E.g.*, *United States v. $10,700.00 in U.S. Currency*, 258 F.3d 215, 221 (3d Cir. 2001); *$864,400.00*, 2009 WL 2171249, at *3-5; *$10,000.00*, 348 F. Supp. 2d at 617-18; *United States v. $40,000.00 in U.S. Currency*, 763 F. Supp. 1423, 1430 (S.D. Ohio 1991).

Despite § 1355, a federal court cannot simply do what it pleases just because the word "forfeiture" is in a complaint or motion. For example, CAFRA, at 18 U.S.C. § 983(e), "provides the exclusive basis for a district court to set aside an administrative forfeiture." *Cohen-Sanchez v. United States*, 2012 WL 1150760, at *2 (D.N.J. Apr. 5, 2012). This provision limits the scope of judicial review to cases brought by individuals asserting notice defects, over which federal courts have long exercised jurisdiction. *E.g.*, *Minor*, 228 F.3d at 355-59 (4th Cir. 2000); *see Cohen-Sanchez*, 2012 WL 1150760, at *3-4. Also, federal courts are divested of jurisdiction to deal with a motion to return property in a pending criminal case when an administrative

---

[4] CAFRA was enacted in 2000 and materially altered the burden of proof in all civil forfeiture cases begun on or after August 23, 2000. *See United States v. $10,000.00 in U.S. Currency*, 348 F. Supp. 2d 612, 616 n.1 (M.D.N.C. 2004). The government's burden of proof is now a preponderance of the evidence and not just a showing of probable cause. *United States v. $864,400.00 in U.S. Currency*, 2009 WL 2171249, at *2 (M.D.N.C. July 20, 2009); *United States v. One 1998 Tractor*, 288 F. Supp. 2d 710, 713 (W.D. Va. 2003).

9

forfeiture begins. *E.g.*, *Chairez v. United States*, 355 F.3d 1099, 1101-02 (7th Cir. 2004); *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989); *In re Harper*, 835 F.2d 1273, 1274 (8th Cir. 1988), *abrogated on other grounds by United States v. Woodall*, 12 F.3d 791, 793-94 (8th Cir. 1993); *In re Seizure Warrant*, 830 F.2d 372, 374 (D.C. Cir. 1987), *vacated as moot sub nom. Onwuasoanya v. United States*, 488 U.S. 920 (1988); *see Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *Cason v. Holder*, 815 F. Supp. 2d 918, 925 (D. Md. 2011); *Tillman v. United States*, 2009 WL 2151201, at *1 (D. Md. July 14, 2009). And, with the exception of notice issues, federal courts have no jurisdiction to hear claims that a completed administrative forfeiture violated the property owner's constitutional rights. *See* 18 U.S.C. § 983(e); *Ibarra*, 120 F.3d at 474 & n.4; *Linarez v. U.S. Dep't of Justice,* 2 F.3d 208, 212-13 (7th Cir. 1993).

Similarly, it is clear that a federal court can only assert *in rem* jurisdiction over drug proceeds if the state courts have not already exercised *in rem* or *quasi in rem* jurisdiction over the money. *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 447-51 (7th Cir. 1997); *United States v. Certain Real Property 566 Hendrickson Boulevard,* 986 F.2d 990, 993 (6th Cir. 1993); *One 1987 Jeep Wrangler Auto.*, 972 F.2d at 477 n.7; *One 1986 Chevrolet Van*, 927 F.2d at 44; *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir. 1989); *United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 96-99 (7th Cir. 1987); *see Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195-96 (1935); Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 7-8, at 274 (2d ed. 2013) ("[O]nly one court may exercise jurisdiction over property at a time, and the first court to obtain jurisdiction maintains it until it is relinquished.). If, however, a state court has only exercised *in personam* jurisdiction over the owner of the drug proceeds, then federal forfeiture of the proceeds is available. *See United States v. $174,206 in U.S. Currency*, 320 F.3d 658, 660-61 (6th Cir. 2003); *One 1986 Chevrolet Van*, 927 F.2d at 44-45; *Winston-Salem/Forsyth Cnty.*, 902 F.2d at 271 ("Federal forfeitures

10

under section 881 are civil in nature and are in rem proceedings. . . . [Where] there [are] not competing in rem proceedings, . . . the jurisdiction of the district court [need not] give way to that of the state court." (citing *Penn Gen. Cas. Co.*, 294 U.S. at 189)); *State v. Hill*, 153 N.C. App. 716, 718-19, 570 S.E.2d 768, 769-70 (2002).

All of the cases evaluate whether a state has exercised *in rem* jurisdiction over drug proceeds under that state's law. The cases addressing whether a motion filed by a defendant in a state court criminal case gives the state court *in rem* or *quasi in rem* jurisdiction over the money are all over the lot, and usually turn upon the specific statutes in the particular state. *See, e.g.*, *$506,231,* 125 F.3d at 444-45, 450 n.6 (Illinois law); *Madewell v. Downs*, 68 F.3d 1030, 1042-45 (8th Cir. 1995) (Missouri law); *United States v. $12,390*, 956 F.2d 801, 805-06 (8th Cir. 1992) (Missouri law); *One 1986 Chevrolet Van*, 927 F.2d at 44-45 (Rhode Island law); *United States v. $119,000 in U.S. Currency*, 793 F. Supp. 246, 250 (D. Haw. 1992) (Hawaii law); *United States v. $2,542 in U.S. Currency*, 754 F. Supp. 378, 382 (D. Vt. 1990) (Vermont law); *cf. United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990) (holding that a Rule 41 motion to return property filed in a federal criminal case did not result in *in rem* jurisdiction).

So long as a state court has not exercised *in rem* jurisdiction over the proceeds, the federal government may adopt seized property, even if the party transferring it was without authority to release it. *Winston-Salem/Forsyth Cnty.*, 902 F.2d at 270-72; *accord Madewell*, 68 F.3d at 1038.[5] If the state court first exercised *in rem* jurisdiction, however, the fact that the federal government thereafter took and maintains possession of the property "neither strips the

---

[5] Other courts have disagreed. *United States v. One 1987 Mercedes Benz Roadster,* 2 F.3d 241, 243-44 (7th Cir. 1993), *superseded by statute*, 720 Ill. Comp. Stat. 570/505, *as recognized in United States v. $62,600*, 899 F. Supp. 378, 379 (N.D. Ill. 1995); *United States v. One 1979 Chevrolet C-20 Van,* 924 F.2d, 120, 122-23 (7th Cir. 1991), *superseded by statute*, Wis. Stat. § 161.555(1), *as recognized in United States v. $84,940 in U.S. Currency*, 86 F. App'x 978, 982 (7th Cir. 2004); *DeSantis*, 866 A.2d at 148; *Johnson v. Johnson*, 849 P.2d 1361, 1363-65 (Alaska 2003); *In re $3,166,199,* 987 S.W.2d 663, 667-68 (Ark. 1999); *see also In re U.S. Currency, $844,520,* 136 F.3d 581, 583-84 (8th Cir. 1998) (Loken, J., concurring).

first court of jurisdiction nor vests it in the second. To hold otherwise would substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine." *$79,123.49*, 830 F.2d at 98 (internal citation omitted).

North Carolina law authorizes civil *in rem* forfeiture proceedings in some circumstances. *See, e.g.*, N.C. Gen. Stat. § 75D-5 (authorizing civil *in rem* forfeiture proceedings brought by Attorney General of North Carolina against property "used or intended for use in the course of, derived from, or realized through a racketeering activity or pattern of racketeering activity"); N.C. Gen. Stat. §§ 19-1.3 & 19-6 (authorizing civil forfeiture of money paid or received in connection with sale or exhibition of lewd films and publications, gambling, prostitution, or illegal sale of alcoholic beverages). No one contends that such a forfeiture proceeding was initiated in this case.

Outside of contexts like racketeering for which civil forfeiture is specifically authorized by statute, North Carolina allows forfeiture of drug proceeds only in connection with criminal cases. *See State v. Jones*, 158 N.C. App. 465, 472, 581 S.E.2d 107, 110 (2003). North Carolina General Statute § 90-112(a) identifies the property subject to forfeiture under the North Carolina Controlled Substances Act. Such property includes money "acquired, used, or intended for use, in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance in violation of" the Act. N.C. Gen. Stat. § 90-112(a)(2). This is a "criminal, or *in personam*, forfeiture statute which requires that the State prove the guilt of the property's owner beyond a reasonable doubt." *Jones*, 158 N.C. App. at 472, 581 S.E.2d at 110 (citing *State v. Johnson*, 124 N.C. App. 462, 478 S.E.2d 16 (1996)). A conviction in state or federal court suffices. *State v. Woods*, 146 N.C. App. 686, 689-93, 554 S.E.2d 383, 385-87 (2001).

North Carolina General Statute § 15-11.1 outlines the state's procedures for custody and disposition of property, including drug proceeds, seized by law enforcement. Under this provision, law enforcement officers are directed to "safely keep [seized] property . . . as long as necessary to assure that the property will be produced at and may be used as evidence in any trial." N.C. Gen. Stat. § 15-11.1(a). Property held pursuant to this statute can be released by the district attorney, but must be done so "pursuant to his lawful authority" and only where "he determines that such property is no longer useful or necessary as evidence in a criminal trial and he is presented with satisfactory evidence of ownership." *Id.* A court can also release property after a hearing. *Id.* The North Carolina courts have called this statute "housekeeping" in nature, focusing on its function to ensure that evidence is available for trial. *Hill*, 153 N.C. App. at 721, 570 S.E.2d at 771. The statute specifically states that property which is subject to forfeiture and disposition under another "general or special law, shall be disposed of in accordance therewith." N.C. Gen. Stat. § 15-11.1(c).

It is now well-established that "N.C. Gen[eral] Stat[ute] § 90-112(a)(2) is a criminal, or *in personam*, forfeiture statute, as opposed to a civil, or *in rem*, forfeiture statute." *Johnson*, 124 N.C. App. at 476, 478 S.E.2d at 25. It is equally well established that federal forfeiture proceedings under § 881 are *in rem*. *See Winston-Salem/Forsyth Cnty.*, 902 F.2d at 271; *Hill*, 153 N.C. App. at 718-19, 570 S.E.2d at 769-70. These same cases also establish that North Carolina does not exercise *in rem* jurisdiction over drug proceeds simply by seizing them as evidence.

In *State v. Hill*, county law enforcement searched the two defendants' homes pursuant to valid warrants, seized currency from both residences, and charged each defendant with criminal drug offenses. 153 N.C. App. at 717, 570 S.E.2d at 769. The Superior Court ruled that the county violated N.C. General Statute §§ 15-11.1 and 90-112 when it turned over the seized

13

currency to federal authorities pursuant to 21 U.S.C. § 881. *Id.* at 717-18, 570 S.E.2d at 769.

The North Carolina Court of Appeals vacated the Superior Court decision, noting that North

Carolina's statutes operate only *in personam* while the federal statute authorizing forfeiture

operates *in rem*. *Id.* at 718-21, 570 S.E.2d at 769-71. The Court of Appeals ruled that "routine

inter-governmental cooperation between state and federal law enforcement agencies is not

contrary to our statutory mechanism to safeguard seized property," *id.* at 722, 570 S.E.2d at 772,

and that in fact North Carolina drug enforcement law requires state and local agencies and their

officers to cooperate with federal agencies. *Id.* at 721, 570 S.E.2d at 771 (citing N.C. Gen. Stat.

§§ 90-95.2 & 90-113.5). The court held that local authorities were obligated to turn over seized

currency to the federal agency once a federal forfeiture had been adopted. *Id.* at 721, 570 S.E.2d

at 771.

Similarly, in *United States v. Winston-Salem/Forsyth County Board of Education*, police

recovered weapons, drugs, and cash during a search of a residence pursuant to a valid search

warrant. 902 F.2d at 269. Federal officials adopted the seized cash shortly thereafter. *Id.* at

269-70. The state court later ordered the police department to return the cash to the defendant in

the criminal case, and the police department sought a declaratory judgment in federal district

court. *Id.* at 270. The Fourth Circuit, affirming the district court, held that after the federal

forfeiture was initiated, the state court lacked jurisdiction to order the cash returned, specifically

noting that the state statute regarding seizure of evidence is *in personam* in nature, while the

federal forfeiture was *in rem*. *Id.* at 271. The court declined to reach the question of exclusive

jurisdiction over federally forfeited funds, but did note that neither court had truly exclusive

jurisdiction because the federal and state proceedings were of a different nature from each other.

*Id.* at 270-72.

14

While *Hill* and *Winston-Salem/Forsyth County* make clear that the State of North Carolina does not exercise *in rem* jurisdiction over alleged drug proceeds simply by seizing them as evidence, the state is not without authority just because drug money has been federally forfeited. In *State v. King*, the North Carolina Court of Appeals recently held that even when law enforcement acts pursuant to federal law in forfeiting funds to the DEA, "[i]t is within the State's power to return funds in the amount seized from defendant, regardless of whether the *exact* cash seized can be returned." ___ N.C. App. ____, 721 S.E.2d 327, 333 (2012) (emphasis in original). In *King*, money seized during a drug arrest was sent by law enforcement to the DEA pursuant to a forfeiture adoption. *Id.* at ____, 721 S.E.2d at 329-30. The defendant and the state entered into a plea agreement calling for the return of seized money to the defendant in exchange for the defendant's guilty plea. *Id.* at ____, 721 S.E.2d at 330. The Court of Appeals held that this promise by the state was enforceable even though the "exact funds" had been turned over to the DEA, because "[m]oney is fungible." *Id.* at ____, 721 S.E.2d at 333. The plea agreement was reinstated and the state was ordered to pay the defendant "an amount equal to the amount of funds seized." *Id.*[6]

And, of course, a state can always change its laws so that its courts acquire *in rem* jurisdiction from the moment drug proceeds are seized. *E.g.*, *Madewell*, 68 F.3d at 1034 n.2 (noting that the Missouri legislature adopted a statute to prevent state law enforcement officers from turning over seized property to the United States until after a state court hearing about which all interested parties receive adequate notice);[7] *cf. $506,231*, 125 F.3d at 450-51 (applying

_____

[6] The court in *King* did not order the law enforcement entity which had seized the money to repay the criminal defendant. Rather, the order to repay the money appeared directed at the State of North Carolina, not the law enforcement entity.

[7] The Missouri statute postdated the events discussed in *Madewell*, and was designed to keep state control over forfeited drug proceeds. *See* von Kaenel, 72 Wash. U.L.Q. at 1482-84.

15

an Illinois law requiring a "turn-over order" from state court). North Carolina could also change its laws to require certain safeguards before the money is transferred. *See Johnson*, 849 P.2d at 1363-64 (discussing Alaska statutes governing how money subject to forfeiture must be handled). Civil actions for conversion may be available if state procedural requirements have not been met. *See id.* at 1365; *Martin v. Ind. State Police*, 537 F. Supp. 2d 974, 989-90 (S.D. Ind. 2008) (dismissing § 1983 claims arising out of illegal transfer of seized funds to DEA and remanding state law conversion claim to state court). Finally, it is possible that state courts in criminal cases have inherent or equitable authority to sanction law enforcement entities which violate state law, or authority similar to that in Fed. R. Crim. P. 41(e) to deal with extraordinary situations. *Compare Robinson v. United States*, 734 F.2d 735, 738-39 (11th Cir. 1984) ("Allowing the government to avoid its responsibility under the Rules merely by filing a forfeiture action after default entry would contribute nothing to the respect due the judicial process. . . . [E]quitable considerations compel the relief here granted."), *with Martin*, 662 F.3d at 306 ("The illegal seizure of property does not immunize that property from forfeiture as long as the government can sustain the forfeiture claim with independent evidence.").[8]

### III. Analysis

#### A. Did the Superior Court's Orders Rest on *In Rem* Jurisdiction over the Drug Proceeds or *In Personam* Jurisdiction over the Parties?

The City contends that this is a federal forfeiture enforcement action over which this Court has jurisdiction and that the Superior Court lacked jurisdiction over Ms. Robinson's oral motion to return funds made when she pled guilty on March 2, 2011. Ms. Robinson contends

---

[8] For a helpful discussion of many of the forfeiture issues discussed in this Opinion, see generally Cassella, *Asset Forfeiture Law in the United States*. For a similarly helpful discussion specifically addressing North Carolina forfeiture law, see Steven L. Kessler, *Civil and Criminal Forfeiture: Federal and State Practice* § 9:13 (2001).

16

that her written motion to return the money filed on February 23, 2010 gave the Superior Court *in rem* jurisdiction, and that this jurisdiction did not terminate at any point before March 2, 2011.

As discussed *supra*, the jurisdictional boundaries between federal and state courts in the forfeiture context turn on whether and when a particular court exercised *in rem* or *in personam* jurisdiction. The key issue is therefore what kind of jurisdiction the Superior Court had and exercised when it ruled on Ms. Robinson's initial written motion in March 2010. If the Superior Court was exercising only *in personam* jurisdiction when it denied Ms. Robinson's motion to return the seized money, then the assertion of *in rem* jurisdiction in the federal administrative forfeiture was proper and this Court has jurisdiction to enforce it. *See, e.g.*, *Winston-Salem/Forsyth Cnty.*, 902 F.2d at 271. The Court concludes that the Superior Court's initial order denying Ms. Robinson's motion to return the money contemplated only *in personam* jurisdiction.

Whether the filing of a motion to return seized property vests the state court with *in rem* jurisdiction, separate from the *in personam* jurisdiction established by the North Carolina criminal forfeiture statute, is a state law question not yet squarely addressed by North Carolina courts. Cases from around the country tend to say that such motions filed in state court do not establish *in rem* jurisdiction, *e.g.*, *Madewell*, 68 F.3d at 1043-44; *One 1986 Chevrolet Van*, 927 F.2d at 44-45; *$119,000*, 793 F. Supp. at 250; *but see $2,542*,754 F. Supp. at 382. That is certainly the case in federal criminal cases. *E.g.*, *Price*, 914 F.2d at 1511; *Castro*, 883 F.2d at 1019; *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988). The *Hill* court implied that the filing of such a motion is not an important jurisdictional event in North Carolina, but it did not explicitly say so.[9]

---

[9] In *Hill*, it is clear that a motion for the return of the property was filed. The court gave the following statement of the facts:

> Each defendant was charged with drug offenses following the
> searches of their residences. The officers also seized currency from each

Here, Ms. Robinson's written motion seeking return of the money explicitly relied on N.C. General Statute § 90-112.  (Doc. 25-4 at ¶ 9.)  She expressly argued that the money was not subject to forfeiture under state law, and did not rely on any other law to give the court jurisdiction to decide the question of whether the money should be returned to her.  (*Id.* at ¶ 11.)  In its initial decision denying Ms. Robinson's motion to return the money, the Superior Court discussed the need for an evidentiary basis to make a decision about what to do with the money, and cited *State v. Fink*, 92 N.C. App. 523, 375 S.E.2d 303 (1989).  (Doc. 25-7 at 2.)  *Fink* also applied § 90-112 in deciding that "mere possession of currency in close proximity to narcotics does not warrant forfeiture."  92 N.C. App. at 533, 375 S.E.2d at 309.  As noted *supra*, North Carolina courts consistently interpret § 90-112(a) to operate *in personam*, not *in rem*.  *Jones*, 158 N.C. App. at 472, 581 S.E.2d at 110; *Woods*, 146 N.C. App. at 689-93, 554 S.E.2d at 385-88; *Johnson*, 124 N.C. App. at 476, 478 S.E.2d at 25; *see also Winston-Salem/Forsyth Cnty.*, 902 F.2d at 271.

In North Carolina, forfeiture in criminal cases can only proceed after conviction of the defendant.  Kessler, *Civil and Criminal Forfeiture* §1:4, at 1-9.[10]  Under North Carolina law, the

---

defendant.  On 1 May 2001, the district attorney however dismissed the criminal charges.  While the exact date is not clear from the record, at some point subsequent to the search and prior to the hearing on the motion for return of property, the seized currency was turned over to the DEA for forfeiture pursuant to 21 U.S.C. § 881.

*Hill*, 153 N.C. App. at 717-18, 570 S.E.2d at 769.  No further discussion of dates or timing was provided.  One can arguably assume from this that the North Carolina Court of Appeals did not find the date a motion for return of the money was filed to be important, and that its decision did not turn on the specifics of when such a motion was filed in relation to when federal authorities adopted the forfeiture.  However, the court did not explicitly say so.

[10] Because of the diminished standard of proof in a civil forfeiture, an acquittal on the underlying criminal charge does not preclude a civil forfeiture action.  Kessler, *Civil and Criminal Forfeiture* § 1:4, at 1-12; *see United States v. Beach*, 113 F.3d 188, 190-91 (11th Cir. 1997); *United States v. Kim*, 870 F.2d 81, 85 (2d Cir. 1989); *cf.* Gibson, 39 Hastings Const. L.Q. at 589-90 (advocating "[i]ncreasing the standard of proof required in civil forfeiture actions").

conviction must be for a crime involving the "selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting" of a controlled substance. N.C. Gen. Stat. § 90-112(a)(2). The Superior Court clearly contemplated deciding whether the money seized from Ms. Robinson was subject to state forfeiture—an *in personam* decision—after the resolution of her criminal charges. (Doc. 25-7.)

In the alternative, even if the Court assumes that Ms. Robinson's motion gave the Superior Court *in rem* jurisdiction, that jurisdiction ended when the Superior Court denied the motion on March 11. Unless and until Ms. Robinson was convicted of a crime involving selling or intending to sell a controlled substance, the Superior Court could not order forfeiture of the drug proceeds. N.C. Gen. Stat. § 90-112. Its only jurisdiction over the seized money at that point arose in connection with the "housekeeping statute," N.C. Gen. Stat. § 15-11.1(a), and, as noted *supra*, this does not prevent federal forfeiture. *See Hill,* 153 N.C. App. at 718-21, 570 S.E.2d at 769-71.

The record does not establish exactly when the FBI received the money or deposited it and the case law does not clearly establish exactly what event comprises the exercise of federal jurisdiction over seized funds. *See supra* note 3. Even assuming the check was mailed on the date it was written[11] and that the postal service delivered it to the FBI within a couple of days, it could not have cleared before the Superior Court's order was entered. Thus, by the time the FBI exercised unmistakable jurisdiction over the money seized from Ms. Robinson, the Superior Court had declined to exercise its jurisdiction over that money and there were no impediments to the exercise of federal jurisdiction at that point.

---

[11] The evidence is that the check was mailed "on or about" the day it was written. (*See* Doc. 22 at ¶ 25.)

The later Superior Court order, at issue here, is not necessarily inconsistent with these conclusions. At no point in open court during the guilty plea hearing, (Doc. 25-9), in its initial written order directing that the money be returned, (Doc. 25-8), or even in its more detailed order denying the City's motion to reconsider, (Doc. 25-11), did the Superior Court expressly state or claim that the filing of the written motion gave the Superior Court *in rem* jurisdiction, that the Superior Court was acting *in rem* when it denied the original written motion, or that it continued to have *in rem* jurisdiction based on a year-old motion that had been previously denied.[12] The timing of the Superior Court's order directing that the money be returned is also consistent with the *in personam* jurisdiction that accompanies criminal cases. It was entered at the usual time after conviction of a drug crime, when Ms. Robinson pled guilty to misdemeanor possession of marijuana and misdemeanor possession of drug paraphernalia, (Doc. 25-8; Doc. 25-9 at 19), neither of which is a crime for which forfeiture is allowed under state law. *Cf. Johnson*, 124 N.C. App. at 476, 478 S.E.2d at 25 (explaining that money seized from defendant convicted of cocaine possession but acquitted of possession with intent to sell or deliver cocaine was not subject to criminal forfeiture under N.C. General Statute § 90-112(a)(2)). Upon the resolution of

---

[12] If the Superior Court at any time had clearly stated that it had *in rem* jurisdiction, this might be a more difficult issue. As discussed *supra*, whether a state court is acting *in rem* or *in personam* is generally a question of state law. Moreover, a court generally has jurisdiction to decide whether it has jurisdiction, and such decisions cannot generally be collaterally attacked. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites des Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."). Federal courts must apply this finality principle whether the court whose jurisdiction is being challenged was a federal court, *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) ("[F]ederal courts have the authority to determine whether they have jurisdiction, and '[t]heir determinations of such questions, while open to direct review, may not be assailed collaterally.'" (quoting *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940))), or a state court, *Durfee v. Duke*, 375 U.S. 106, 116 (1963) (holding that when the inquiry into a state court's jurisdiction to render a decree "disclosed . . . that the jurisdictional issue had been fully and fairly litigated by the parties and finally determined in the [state] court, . . . further inquiry [in federal court] was precluded"); *Hooks v. Hooks*, 771 F.2d 935, 949 (6th Cir. 1985) ("It is well-settled . . . that full faith and credit extends to state court determinations of subject matter jurisdiction over a controversy, as well as the merits of the controversy itself.").

the criminal case, Ms. Robinson would be entitled to return of the money under state forfeiture law, and such matters are ordinarily dealt with, as here, at the close of the criminal case. *See, e.g.*, *Fink*, 92 N.C. App. at 533-34, 375 S.E.2d at 309.

Thus, the Court finds and concludes that in its March 11, 2010, March 2, 2011, and August 15, 2011, orders, the Superior Court was acting on the basis of its indisputable *in personam* jurisdiction over the defendant and not on the basis of *in rem* or *quasi in rem* jurisdiction over the money.

### B. Does This Court Have Jurisdiction to Enforce the Federal Administrative Forfeiture?

Having concluded that the Superior Court exercised *in personam* jurisdiction over the parties, not *in rem* jurisdiction over the seized funds, the Court must now decide whether it has jurisdiction to enforce the federal administrative forfeiture.

The Concord Police Department seized the funds lawfully on February 12, 2010. (Doc. 25-11 at 7, ¶ 21.) The FBI then adopted the seizure on March 8, 2010, pursuant to 21 U.S.C. § 881(a)(6), 19 U.S.C. §§ 1602-1618, and 18 U.S.C. §§ 981 and 983. The City asserted in its Amended Complaint that these statutes gave rise to its cause of action and that this Court therefore has federal question jurisdiction under 28 U.S.C. § 1331.[13] (Doc. 6 at 2, ¶ 5.) Ms. Robinson basically relied upon the same statutes cited by the City to support her counterclaim for a declaratory judgment that the City must return the money to her.

None of these statutes provides a cause of action to a local governmental entity (e.g., the City or its police department) against the putative owner to enforce or uphold the federal forfeiture; nor do they provide a cause of action to the putative owner (e.g., Ms. Robinson)

---

[13] In addition to the statutes listed *supra*, the City cited 19 U.S.C. § 1619. That citation appears to have been a clerical error, since § 1619 relates to awards of compensation to informers and has no applicability to this case.

against the local governmental entity that originally seized her now-forfeited money and might later regain possession of some of it.  Title 18 U.S.C. § 983 provides the general rules governing federal civil forfeiture proceedings and authorizes the United States to file civil actions in federal courts, but it does not authorize state or local authorities to file such an action.  Section 981 establishes that the United States does not need a warrant to adopt funds lawfully seized by state and local law enforcement and transferred to the federal government, but it, too, does not create a cause of action for local governments.  Title 21 U.S.C. § 881, the federal statute that authorizes forfeiture of certain drug proceeds to the United States, and 19 U.S.C. §§ 1602-1618, the customs laws which provide the procedural rules for such forfeitures, speak to the procedures the United States must follow when seeking forfeiture.  The United States, though, is not a party to this action.  Thus, none of these statutes give this Court jurisdiction over the dispute between the City and Ms. Robinson.

After an invitation to further brief the jurisdictional question, the City contended that this Court has jurisdiction pursuant to 28 U.S.C. § 1355.[14]  As noted *supra*, § 1355 gives district courts exclusive jurisdiction "of any action or proceeding for the recovery or enforcement" of a federal forfeiture.  28 U.S.C. § 1355(a).  There is no assertion that this case is an action for the "recovery" of a forfeiture; the question thus becomes whether this case is an action or proceeding for the "enforcement" of a forfeiture.

The City has not cited and the Court has not located a case in federal court exactly like this one, where a local government sues an individual over funds seized by the local government and forfeited to the federal government.  The *Winston-Salem/Forsyth County* case is similar to a large degree.  902 F.2d at 267.  There, the United States and the Winston-Salem Police Department were the plaintiffs in a declaratory judgment action.  *Id.* at 270.  They challenged a

---

[14] Federal jurisdiction may be sustained if granted by a federal statute, even though the statute is not pleaded.  *Paynes v. Lee*, 377 F.2d 61, 63-65 (5th Cir. 1967).

state court order directing the police department to return money to a criminal defendant after the money had been adoptively forfeited by the federal government.  *Id.*  Without discussing whether it had subject matter jurisdiction, the district court and the Fourth Circuit each reached the merits of that dispute.  *Id.* at 270, 273.

 *Winston-Salem/Forsyth County* is different from the present case because there, the United States was a party, along with the local law enforcement agency, the criminal defendant, and the local school board that under state law would receive the money if it were forfeited.  Also, in that case the money had already been transferred to the local law enforcement agency and the United States expressly sought an order allowing the agency to keep it.  *Id.* at 269-70.  However, the underlying issue was the same as here: once a valid federal administrative forfeiture is complete, can a state court tell a local law enforcement agency to return the forfeited money to a criminal defendant?

 The Court concludes that when the United States has jurisdiction over the seized money to begin with, as here, then the *in rem* administrative forfeiture completely terminates the rights of the rest of the world, including the criminal defendant, to the money.  Title 19 U.S.C. § 1609(b) specifically provides that an administrative forfeiture "shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States" and that "[t]itle shall be deemed to vest in the United States free and clear of any liens or encumbrances . . . from the date of the act for which the forfeiture was incurred."  Where a later development, such as a state court order, potentially creates confusion as to the validity and finality of the previously completed forfeiture, a district court has jurisdiction under 28 U.S.C. § 1355 to enforce that forfeiture in a declaratory judgment action between parties claiming an interest in the forfeited drug proceeds.  This Court thus can exercise jurisdiction over the present action, to the extent enforcement of the federal forfeiture is at issue.

### C. Was the Federal Administrative Forfeiture Valid?

Ms. Robinson concedes she received notice of the forfeiture in 2010 and does not contend that such notice was defective. (Doc. 26 at 4-5.) This obviates the only basis on which this Court can set aside an administrative forfeiture. 18 U.S.C. § 983(e). If Ms. Robinson contended that the money did not constitute drug proceeds, her remedy was to respond to the notice sent by the federal government and to contest the forfeiture in the proceedings described therein. *E.g.*, *Ibarra*, 120 F.3d at 475; *Linarez*, 2 F.3d at 212-13; *Hill*, 153 N.C. App. at 722, 570 S.E.2d at 772 ("A party who is aggrieved by the federal proceeding must avail himself of the remedies provided under federal law for return of seized property or judicial review of administrative forfeitures."). She did not, and her failure to avail herself of the procedures described in the notice extinguished her rights in the seized funds.

To the extent the Superior Court found that the federal forfeiture violated federal law, it had no jurisdiction to so find. Congress has been clear that federal district courts have exclusive jurisdiction over federal forfeitures. 28 U.S.C. § 1355. The federal adoptive forfeiture was therefore valid and enforceable.

### D. What Relief Is Appropriate?

The Court does not have jurisdiction to order the relief that Ms. Robinson seeks. "Once the seized property is administratively forfeited, the district court is divested of jurisdiction to review the merits of the forfeiture action." *Cohen-Sanchez*, 2012 WL 1150760, at *3. As noted *supra*, absent some problem with the notice, which is not alleged here, the Court has no jurisdiction to set aside the forfeiture. *Id.*; *McKinney v. DEA*, 580 F. Supp. 2d 1, 3-4 (D.D.C. 2008); *see also* 18 U.S.C. § 983(e)(1).

Because it operated *in rem*, *Winston-Salem/Forsyth Cnty.*, 902 F.2d at 271, the forfeiture established the United States as the owner of the seized funds and terminated the rights of all

24

other persons and entities, including Ms. Robinson, to possession or ownership of the funds.  *See* 19 U.S.C. § 1609(b).  The City does not have to return to Ms. Robinson any money it may receive from the United States via equitable sharing.

The Superior Court also ordered the City to pay Ms. Robinson $3,520—an amount equivalent to 20 percent of the seized money—that it would not receive back from the United States.  Since the City would have to draw these funds from its own coffers, this portion of the judgment in one sense does not implicate the seized funds that are the subject of the present forfeiture enforcement action.  If this $3,520 judgment were a sanction for violating state law, or were directed at the State, as in *King*, ___ N.C. App. at ____, 721 S.E.2d at 333, this Court would not have jurisdiction to speak to its validity.  To the extent this judgment is not a sanction, and it does not appear to be, it is no more than an equitable means of returning the seized money to Ms. Robinson.  It was directly conditioned on the Superior Court's conclusions that the federal forfeiture was invalid and that the seized money rightfully belonged to Ms. Robinson.  As explained *supra*, these conclusions postdated the *in rem* federal administrative forfeiture and the Superior Court was without jurisdiction to so order.

Beyond that, however, some of the declaratory relief the City requests is outside the jurisdiction of this Court, unnecessary to enforcement of the federal forfeiture, or both.  For example, the City asks the Court to declare that "the actions undertaken by the City and its Police Department were, at all times, lawful and Constitutional."  (Doc. 6 at 12, ¶ 8c.)  Whether the local authorities acted lawfully or violated North Carolina law when transferring the seized funds is irrelevant to the validity of the federal forfeiture; it is sufficient for present purposes that the funds were transferred to the federal government and that the federal government adopted them.  *See* 18 U.S.C. § 981(b)(2)(C); *Winston-Salem/Forsyth Cnty.*, 902 F.2d at 272 ("[T]he United States may adopt a seizure even when the person who seized the property had no authority to do

25

so. It follows that the government may adopt a seizure where there was no authority to transfer the property." (internal quotation marks omitted)).

Furthermore, the City has not identified any source of jurisdiction pursuant to which this Court could decide whether the City violated North Carolina law when it contacted the FBI and turned over the drug proceeds while Ms. Robinson's motion to return the money was pending. On the contrary, this is a question of state law, and one that the Superior Court had jurisdiction to decide. If the City thought the Superior Court decided this state law question wrongly, it should have appealed to the North Carolina Court of Appeals.[15] Other requests fall in this same general category. (*See* Doc. 6 at 13-14, ¶¶ 8k, 8l.)

The City also asks the Court to declare that "there was insufficient factual or legal basis to support the Superior Court's finding" that Ms. Robinson "lacked the mental capacity to appreciate" the notice of forfeiture. (*Id.* at 13, ¶ 8j.) This is not a relevant question to any issue before the Court, and federal courts generally do not have subject matter jurisdiction to review state court judgments. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The City also asks the Court to declare that the filing in state court of a motion to return property by a criminal defendant "is not the equivalent" of a state forfeiture proceeding. (Doc. 6

---

[15] Indeed, the state court's conclusion that state law was violated would appear to be binding on this Court. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so. . . ." (citing 28 U.S.C. § 1738)); *McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 54, 542 S.E.2d 227, 233 (2001) (describing North Carolina's criteria for issue preclusion, which are satisfied here); *see also Lance v. Dennis*, 546 U.S. 459, 460 (2006) ("The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))). The City fails to explain specifically why the Superior Court lacked jurisdiction to decide state law questions not tied to the federal forfeiture. Nor is there any basis on which to ignore the Superior Court's determination that it had jurisdiction to decide those questions. *Cf. supra* note 12.

at 12, ¶ 8f.)  However, as discussed *supra*, it is unquestionably within state courts' jurisdiction to decide whether a motion to return property vests the state courts with *in rem* jurisdiction over the property.  The weight of authority suggests that such a motion operates *in personam* in North Carolina, but there are certainly valid reasons a state court could find otherwise.  Moreover, a state court hearing such a motion before a federal forfeiture is adopted could easily decide to expressly assert *in rem* jurisdiction over alleged drug proceeds; whether that would be appropriate or not is a question of state, not federal, law.  There is no reason for this Court to make the broad pronouncement the City seeks.

Finally, this Opinion should not be interpreted as rendering the Superior Court's orders null and void, directing the Superior Court to vacate those orders, or insulating the City completely from the relief the Superior Court ordered.  The Superior Court ordered the City to return to Ms. Robinson several items of personal property never forfeited federally.  There is no reason to interpret that relief as conditioned in any way on the Superior Court's conclusions that the forfeiture of the seized money was invalid or that the seized money rightfully belonged to Ms. Robinson.  Therefore, this Opinion does not disturb the Superior Court's orders to the extent they require the City to return Ms. Robinson's non-monetary personal property.


**CONCLUSION**

During the proceedings, the parties told the Court that they believed the circumstances in this case are likely to arise again.  The Court fervently hopes not.  It seems obvious that these kinds of issues could be avoided substantially if local law enforcement and state prosecutors were in closer communication.  In this case, for example, the dispute likely never would have arisen if the state prosecutor had been aware of the federal forfeiture, and it is mysterious that the

police did not keep the prosecutor informed of the whereabouts of the evidence. While such communication may not be required by federal law, it is still a good idea.

For the reasons stated herein, **IT IS ORDERED** that the City's Motion for Summary Judgment (Doc. 19) is **GRANTED** in part and **DENIED** in part, and Ms. Robinson's Counterclaim is **DISMISSED**. The Court hereby **ORDERS** and **DECLARES** that:

1. At no point between February 12, 2010, and August 15, 2011, did the Superior Court exercise *in rem* jurisdiction over the seized funds in question.

2. The Concord Police Department lawfully seized the funds in question on February 12, 2010. The FBI lawfully adopted the seizure on March 8, 2010, pursuant to 21 U.S.C. § 881, 19 U.S.C. §§ 1602-1619, and 18 U.S.C. §§ 981 and 983, and took possession of the funds when the check from the City of Concord cleared.

3. The district courts of the United States have original and exclusive jurisdiction over any action or proceeding for the recovery or enforcement of any forfeiture incurred under any Act of Congress. This Court exercises that jurisdiction over the present action.

4. Ms. Robinson received valid notice of the FBI's adoption of the seized funds and of her right to contest it in federal administrative and judicial proceedings. At that point, her exclusive remedy for contesting the seizure and adoptive forfeiture of the funds was pursuant to measures established in 21 U.S.C. § 881, 19 U.S.C. §§ 1602-1619, and 18 U.S.C. §§ 981 and 983. Her failure to respond to the notice or avail herself of the procedures set forth therein extinguished her rights in the seized funds.

5. The federal adoptive forfeiture was valid and enforceable, and it operated *in rem*. At the conclusion of this administrative forfeiture, the United States was the owner of the seized funds, and the rights of all other persons and entities, including Ms. Robinson, to

28

possession or ownership of the funds were terminated.  The City does not have to return

$17,600 to Ms. Robinson.

This the 28th day of November, 2012.


                                         _____
                                          UNITED STATES DISTRICT JUDGE

**APPENDIX**

<u>**Timeline of Key Events**</u>

**February 12, 2010**: City of Concord police search Penny Robinson's hotel room, finding drugs and money. Ms. Robinson charged in state court with felony Possession With Intent to Sell or Deliver Marijuana and Possession of Drug Paraphernalia.

**February 16, 2010**: Officer Childers contacts the FBI about beginning federal forfeiture proceedings against the money seized from Ms. Robinson.

**February 23, 2010**: Ms. Robinson files a motion for the return of seized property.

**March 1, 2010**: Ms. Robinson is indicted. Meanwhile, the City formally initiates request to the FBI to adopt a forfeiture of the money.

**March 4, 2010**: The FBI accepts the City's adoption request.

**March 9, 2010**: The City writes a check to the U.S. Marshals Service and mails it on or about that date.

**March 11, 2010**: The Superior Court, after a hearing, denies Ms. Robinson's motion without prejudice.

**April 15, 2010**: The FBI sends Ms. Robinson a notice of forfeiture and of her right to contest the forfeiture of the money. She thereafter receives the notice but does not respond.

**March 2, 2011**: Ms. Robinson pleads guilty to misdemeanor drug charges. The Superior Court orders the money returned to Ms. Robinson.

**June 6, 2011**: The City files a motion seeking reconsideration of the Superior Court's order requiring the Police Department to return the money to Ms. Robinson.

30

**August 8, 2011**:     The Superior Court denies the City's motion and orders the City to return

the money to Ms. Robinson

**September 14, 2011**:  The City files this lawsuit.